**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lula Stago, et al., | No. CV-20-08118-PHX-SPL |
| Plaintiffs, | |
| vs. | **ORDER** |
| Office of Navajo and Hopi Indian Relocation, | |
| Defendant. | |

Before the Court are Plaintiffs' Motion for Summary Judgment (Doc. 21) and Defendant's Cross-Motion for Summary Judgment (Doc. 25). Both Motions have been fully briefed. For the reasons that follow, Plaintiffs' Motion will be granted, Defendant's Cross-Motion will be denied, and the matter will be remanded for further proceedings.[1]

**I.    BACKGROUND**

  **A. The Settlement Act**

The Navajo–Hopi Settlement Act (the "Settlement Act") authorized a court-ordered partition of land previously referred to as the Joint Use Area—which was occupied by both Navajo and Hopi residents—into the Navajo Partitioned Lands ("NPL") and the Hopi Partitioned Lands ("HPL"). *See* Pub. L. No. 93-531, § 12, 88 Stat. 1716 (1974); *Clinton v. Babbitt*, 180 F.3d 1081, 1084 (9th Cir. 1999). The Settlement Act also

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. See LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

created what is now the Office of Navajo and Hopi Indian Relocation ("ONHIR") to disburse benefits to assist with the relocation of Navajo and Hopi residents who then occupied land allocated to the other tribe. *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121–22 (9th Cir. 1989).

### B. Factual and Procedural Background

Plaintiffs Lula Stago, Mary Rose Charley, and Frieda Thompson are each enrolled members of the Navajo Nation. (Doc. 26 at 27). Ms. Stago and Ms. Thompson are sisters, and Ms. Charley is their aunt. (Doc. 26 at 27). Plaintiffs each filed an Application for Relocation Benefits, and each was denied by ONHIR. (Doc. 26 at 28). Plaintiffs appealed, and a consolidated hearing—which also included four other applicants related to Plaintiffs—was held before an Independent Hearing Officer ("IHO") on December 20, 2013. (Doc. 26 at 28). On March 21, 2014, the IHO issued a written decision denying Plaintiffs' appeals, finding that Plaintiffs were not legal residents of the HPL on December 22, 1974. (Doc. 26 at 31). On May 21, 2014, ONHIR issued Final Agency Action in the cases of Plaintiffs. (Doc. 22 at 34). On May 21, 2020, Plaintiffs initiated this action seeking judicial review of ONHIR's denial of relocation benefits. (Doc. 1).

Crucial to several of Plaintiffs' arguments in this action are prior ONHIR decisions related to Harris Chezumpena and his daughters Elvira and Bertha Chezumpena. (Doc. 22 ¶¶ 18, 25). Plaintiffs are related to the Chezumpenas and claim that they, along with other extended family members, occupied the same areas on the HPL. (Doc. 21 at 7). Harris was certified by ONHIR for relocation benefits. (Doc. 22 ¶ 187). In decisions related to Elvira's and Bertha's applications for benefits, ONHIR found that "the family" moved from the HPL to the NPL in 1976, after passage of the Settlement Act, although Elvira and Bertha were denied benefits for other reasons. (Doc. 22 ¶¶ 23–24, 30–31). At Plaintiffs' hearing, the parties stipulated that Harris Chezumpena was a legal resident of the HPL as of December 22, 1974. (Doc. 22 ¶ 35).

///

///

## II. LEGAL STANDARDS

### A. Summary Judgment

Generally, summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When conducting judicial review of an administrative agency's action, "there are no disputed facts that the district court must resolve." *Occidental Eng'g Co. v. Immigr. & Naturalization Serv.*, 753 F.2d 766, 769 (9th Cir. 1985). Rather, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* Summary judgment is therefore "an appropriate mechanism for deciding the legal question of whether [an] agency could reasonably have found the facts as it did." *Id.* at 770.

### B. APA Standards of Review

The Court's review of the IHO's decision under the Settlement Act is governed by the Administrative Procedure Act ("APA"). *See Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995). Under the APA, the Court must uphold agency action unless it was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni*, 878 F.2d at 1122.

An ONHIR decision satisfies the "arbitrary and capricious" standard if "the agency examine[s] the relevant data and articulate[s] a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Hopi Tribe*, 46 F.3d at 914 (internal quotation marks omitted). This scope of review is narrow, and the Court may not "substitute its judgment for that of the agency." *Id.* (internal quotation marks omitted). Still, a decision is arbitrary and capricious "if the agency . . . entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,

463 U.S. 29, 43 (1983). Likewise, if an agency "fails to follow its own precedent or fails to give a sufficient explanation for failing to do so," its decision is arbitrary and capricious. *Andrzejewski v. Fed. Aviation Admin.*, 563 F.3d 796, 799 (9th Cir. 2009).

An agency's decision satisfies the "substantial evidence" standard if it is supported by "such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). The standard requires "more than a mere scintilla but less than a preponderance" of evidence. *Id.* The IHO may "draw inferences logically flowing from the evidence." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). "Where evidence is susceptible of more than one rational interpretation," the IHO's decision must be upheld. *Id.*

### C. The Settlement Act and Associated Regulations

A Navajo applicant is eligible for benefits under the Settlement Act if she was a legal resident of the HPL as of December 22, 1974 and was the head of household at that time. 25 C.F.R. § 700.147(a); *Begay v. Off. of Navajo & Hopi Indian Relocation*, 305 F. Supp. 3d 1040, 1044 (D. Ariz. 2018). The applicant bears the burden of proving both the residency and head-of-household elements. 25 C.F.R. § 700.147(b). Only the residency element is at issue in this case. (Docs. 21 at 1; 25 at 11).

Under the applicable regulations, determining an applicant's residence "requires an examination of a person's intent to reside combined with manifestations of that intent." 49 Fed. Reg. 22,278; *see also Charles v. Off. of Navajo & Hopi Indian Relocation*, 774 Fed. Appx. 389, 390 (9th Cir. 2019). Such manifestations of intent may include ownership of livestock, ownership of improvements, grazing permits, livestock sales receipts, homesite leases, medical records, school records, employment records, mailing address records, banking records, voting records, census data, court records, the Joint Use Area roster, and any other relevant data. 49 Fed. Reg. 22, 278. An applicant "qualifies as a legal resident of the land if she was using it for traditional activities." *Shaw v. Off. of Navajo & Hopi Indian Relocation*, No. 20-16112, 2021 WL 2142484, at *1 (9th Cir. May 26, 2021).

## III. DISCUSSION

### A. Additional Documents Not in the Record

As an initial matter, the parties disagree on what documents the Court should consider as part of the administrative record. Plaintiffs attach eight exhibits to their Motion for Summary Judgment (Doc. 21-1), which Defendant argues is improper because they were not part of the administrative record. (Doc. 25 at 7–8).

"[T]he focal point for judicial review [under the APA] should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The administrative record consists not only of the documents compiled and submitted by the agency, however, but also of "documents and materials directly or indirectly considered by agency decision-makers." *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989). Additionally, a district court may consider documents outside of the administrative record in four "narrowly construed" circumstances: when "(1) supplementation is necessary to determine if the agency has considered all factors and explained its decision; (2) the agency relied on documents not in the record; (3) supplementation is needed to explain technical terms or complex subjects; or (4) plaintiffs have shown bad faith on the part of the agency." *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010).

Plaintiffs argue that Exhibit 1 and Exhibits 5–8, which are prior decisions of the IHO, should be considered "to show the inconsistency" of the IHO's decision in this case. (Doc. 29 at 6). Because an agency must follow its own precedent or else explain any deviation, this Court may consider prior ONHIR decisions to determine whether a decision is arbitrary and capricious. *See Torpey v. Off. of Navajo & Hopi Indian Relocation*, No. CV-17-08184-PCT-SMB, 2019 U.S. Dist. LEXIS 154168, at *9–10 (D. Ariz. Sept. 6, 2019). However, previous decisions only serve this purpose if they carry precedential value in the case at hand. *See Whitehair v. Off. of Navajo & Hopi Indian Relocation*, No. CV17-08278-PCT-DGC, 2018 WL 6418665, at *3 (D. Ariz. Dec. 6,

2018). Accordingly, the Court will consider Exhibit 1 and Exhibits 5–8 only if they set forth ONHIR policy or if they involve facts indistinguishable from the instant case. *See id.* at *10.

Plaintiffs use Exhibit 1, the IHO's decision in *In re Minnie Woodie*, to establish ONHIR's policy on customary or traditional use areas. (Doc. 21 at 2–3). Indeed, the Ninth Circuit has recognized that an applicant's use of land for traditional activities qualifies the applicant as a legal resident, which comes not from federal regulations but from the *Minnie Woodie* decision. *See Shaw*, 2021 WL 2142484, at *1; *id.* at *2 n.1 (Bade, J., dissenting) (explaining that the "customary use area" policy is based on the IHO's decision in *Minnie Woodie*); *see also Begay*, 305 F. Supp. 3d at 1048. The IHO was therefore required to consider the *Minnie Woodie* decision at least indirectly, and the Court will consider Exhibit 1 as part of the administrative record.

On the other hand, Plaintiffs use Exhibit 5–8 to demonstrate that "numerous applicants for benefits have been certified to receive them despite their claimed HPL homesites, and/or their names, not appearing in the enumeration [of the Joint Use Area conducted in 1974 and 1975], or only being recorded on the NPL." (Doc. 21 at 15). These exhibits, however, are much like the IHO decisions offered as exhibits in *Whitehair*, where the Court could not determine what evidence was before the hearing officer in the case, where the plaintiff cited no authority to suggest that the decisions had any precedential value, and where the Court could not conclude "that Plaintiff's hand-picked sample of cases represents a settled course of adjudication and a general policy by which Defendant's exercise of discretion will be governed." *Whitehair*, 2018 WL 6418665, at *3 (internal quotation marks omitted). The Court in *Whitehair* did not consider the IHO decisions, and because the same circumstances are present here, this Court will not consider Exhibits 5–8.

Next, Exhibit 2 is the Ninth Circuit's decision in *Shaw*. The Court need not refer to the record in order to cite Ninth Circuit case law and therefore will not consider Exhibit 2 as part of or a supplement to the administrative record.

Exhibit 3 is a Department of the Interior report on the status of ONHIR appeals. Plaintiffs argue that it should be considered because "ONHIR is fully aware of" the report and it provides background and statistics for Plaintiffs' Motion. (Doc. 29 at 5). But Plaintiff does not even attempt to argue that the IHO considered the report or that the report fits any of the *Fence Creek* circumstances, so the Court will not consider Exhibit 3.

Finally, Exhibit 4 is a transcript of a deposition taken in 1991 of the supervisor of the enumeration of the Joint Use Area conducted by the Bureau of Indian Affairs in 1974 and 1975. Plaintiffs argue that it should be considered because "ONHIR's attorney was present and participated in the examination." (Doc. 29 at 6). But the Court has no reason to believe the IHO considered the transcript, nor does the Court see any connection between the participation of an ONHIR attorney in the deposition and any of the *Fence Creek* factors. Thus, the Court will not consider Exhibit 4.

### B. Denial of Relocation Benefits

Plaintiffs argue on several grounds that the IHO's decision was arbitrary, capricious, and not supported by substantial evidence. (Doc. 21 at 17). The Court finds that the IHO arbitrarily disregarded the parties' stipulation as to Harris Chezumpena's residency. As a result, the Court finds that to the extent the IHO's decision relied on findings contrary to the stipulation, it is not supported by substantial evidence. The Court will thus remand for further proceedings giving due consideration to the stipulation. The Court will also address Plaintiff's arguments related to factual findings in previous cases and ONHIR's trustee responsibility, both of which are without merit, to guide the proceedings on remand.

*i. Findings Contrary to the Parties' Stipulation*

Plaintiffs argue that the IHO's decision contradicts the IHO's "declaration" and ONHIR's stipulation, both made at the administrative hearing, "recognizing [Plaintiffs'] family's HPL residence history as determined in the prior cases." (Doc. 21 at 7). At the outset, Plaintiffs misrepresent the IHO's purported "declaration." In fact, the part of the record to which Plaintiffs refer—the IHO's statement at the hearing that "[e]ach applicant

has to prove their legal residence at that residence, but it wasn't abandoned before 1976"—was made in the context of an inquiry to ONHIR's counsel as to whether the agency would so stipulate, which it refused to do. (Doc. 13-3 at 70:14–71:11). Likewise, Plaintiff's characterization of the stipulation that ONHIR did later agree to is overbroad. ONHIR "stipulate[d] that Mr. Harris Chezumpena had a legal residence on the [HPL] as of December 22, 1974," but it did not stipulate as to where his HPL homesite was located, who else resided at the site, or other matters relevant to Plaintiffs' applications. (Doc. 13-4 at 72–73; Doc. 26 at 27).

Still, the IHO's decision is explicitly contrary to the parties' narrow stipulation regarding Harris Chezumpena's residency. The IHO found that "[o]n December 22, 1974, none of the applicants was a legal resident of any area partitioned for the use of the Hopi Indians, as, prior to the date of passage of the Act, Harris Chezumpena . . . had abandoned [his] residence and cornfield in the [HPL] area . . . ." (Doc. 13-7 at 36). He went on to explain that "the concession by ONHIR that Harris Chezumpena used the HPL area as late as 1976 is inconsistent with and contrary to the evidence shown in these appeals." (Doc. 13-7 at 46). But the IHO's decision misunderstands the effect of a stipulation of fact at an administrative hearing.

In *United States v. Smith*, the Ninth Circuit held that a stipulation "is, in truth, a substitute for evidence, in that it does away with the need for evidence." 86 F.3d 1165, 1996 WL 267325, at *3 (9th Cir. 1996). *Smith* involved an administrative decision made by the Interior Board of Land Appeals ("IBLA"). *Id.* at *1. At the hearing before an administrative law judge ("ALJ"), the parties stipulated to one of the elements of the claim at issue. *Id.* at *2. But the IBLA ultimately decided the case on grounds that contradicted the stipulation, stating that the stipulation was ambiguous and lacked foundation. *Id.* at *3. The Ninth Circuit held that "it was arbitrary for the IBLA to reject the stipulation and decide the case on a basis contrary to the stipulation." *Id.* While the ALJ could have rejected the stipulation when it was first presented or could have required the parties to lay foundation for the stipulation, he did not do so. *Id.* at *4. Once the ALJ

accepted the stipulation, the agency "could not properly review the record and decide the facts contrary to the stipulation which had been accepted and which had shaped the hearing before the ALJ." *Id.*

Likewise, here, the IHO could have rejected the parties' stipulation as to Harris Chezumpena's residency or required evidence to support it during the hearing, but he did not. After he accepted the stipulation at the hearing, the IHO could no longer disregard it. Although the IHO found that the stipulation was contrary to the evidence presented, Plaintiffs had no reason to present evidence that might have supported the stipulation because, under Ninth Circuit law, the stipulation did away with the need for such evidence. Accordingly, following *Smith*, the IHO's disregard of the stipulation in his written decision was arbitrary, and the decision must be set aside.

Much of Plaintiffs' Motion and Defendant's Cross-Motion are devoted to whether the IHO's credibility findings and other conclusions were supported by substantial evidence. To the extent those determinations were based on the finding that Plaintiffs' family, including Harris Chezumpena, had abandoned the HPL site prior to December 22, 1974, they are also erroneous. Because the Court cannot determine the extent to which the IHO relied on findings contrary to the stipulation, however, the Court reaches no conclusions as to whether the evidence was otherwise sufficient to support the IHO's decision.

*ii. Contradictions with the IHO's Factual Findings in Prior Cases*

Separately, Plaintiffs argue that the IHO's "finding that Plaintiffs' family abandoned their HPL traditional use area prior to December 22, 1974, contradicts the [IHO's] and [ONHIR's] factual findings in three previous decisions which determined that the family continued to occupy the HPL sites until at least 1976," referring to ONHIR's decisions related to Harris, Elvira, and Bertha Chezumpena's applications for benefits. (Doc. 21 at 7). But as ONHIR correctly contends, Plaintiffs cannot assert nonmutual collateral estoppel against a federal agency. (Doc. 25 at 14).

In *United States v. Mendoza*, the Supreme Court expressly held that "the United

States may not be collaterally estopped on an issue . . . adjudicated against it in an earlier lawsuit brought by a different party." 464 U.S. 154, 155 (1984). While Plaintiffs would have this Court hold that *Mendoza*'s rule does not apply to "discrete issues with limited applicability," (Doc. 29 at 13), *Mendoza* provides for no such exception. In fact, the Supreme Court rejected a subjective standard that, like the exception suggested by Plaintiffs, would "leave[ ] the government at sea" to determine whether it needed to appeal an adverse decision or whether it would be able to relitigate the issue in a later case. *Id.* at 162. The *Mendoza* holding squarely applies in this case, and ONHIR's previous decisions as to Plaintiffs' family members may not estop the agency from making individual residency determinations as to Plaintiffs. *See Begay v. Off. of Navajo & Hopi Indian Relocation*, No. 3:20-cv-8057-DJH, 2021 WL 2826125, at *6 (D. Ariz. July 7, 2021) ("Plaintiff cannot use ONHIR's determination of her sister's residency, to estop ONHIR from making her residency determination.")

Moreover, while ONHIR must follow its own precedent, this merely requires "that the agency appl[y] the law consistently to cases with similar material facts; it does not require the agency find the same facts for different parties, in different proceedings, and based on different evidence." *Daw v. Off. of Navajo & Hopi Indian Relocation*, No. CV-19-08212-PCT-SMB, 2020 WL 5632121, at *4 (D. Ariz. Sept. 21, 2020) (holding IHO's finding that plaintiff's family ceased use of HPL land prior to passage of the Settlement Act was not arbitrary and capricious despite IHO's finding in plaintiff's relative's case that the family did not cease use before that time). Thus, on remand, the IHO is not bound by previous factual findings made in different cases upon different records, but rather, he is free to make findings supported by the evidence—including stipulations—presented in this case.

### iii. ONHIR's Trustee Responsibility

Plaintiffs further argue that ONHIR's denial of benefits violated "its federal trust responsibility to these Navajo applicants." (Doc. 21 at 4). Defendants note, however, that Plaintiffs did not plead a claim for breach of fiduciary duty and suggest that this

argument is therefore irrelevant. (Doc. 25 at 13). Plaintiffs state in response that they "raise the federal trust obligation to highlight the responsibility Congress recognized the U.S. acquired under the Settlement Act." (Doc. 29 at 11).

The Court is well aware of "the longstanding general trust obligation that has dominated Government interaction with Native Americans" as well as "the many grants of express trustee authority in the Settlement Act." *Bedoni*, 878 F.2d at 1124. But the Court does not see how this bears upon Plaintiffs' individual eligibility under the Settlement Act or this Court's review under the APA. Rather, the Settlement Act places upon ONHIR "an affirmative duty to manage and distribute the funds appropriated pursuant to the Settlement Act such that the displaced families receive[ ] the full benefits authorized for them." *Id.* at 1125. In other words, ONHIR has a duty only to disburse benefits to those authorized to receive them under the Settlement Act. Thus, whether ONHIR has a duty to disburse benefits to Plaintiffs flows from the IHO's decision, but ONHIR's duty to disburse benefits to eligible applicants does not dictate Plaintiffs' eligibility.

### C. Remand

"If the record before the agency does not support the agency action, . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Begay v. Off. of Navajo & Hopi Indian Relocation*, No. CV-16-08221-PCT-DGC, 2017 WL 4297348, at *4 (D. Ariz. Sept. 28, 2017). The rare circumstances where remand is not appropriate exist when "the reviewing court finds that the record clearly demonstrates an applicant's eligibility for relocation benefits." *Id.* The Court cannot determine from the record in this case that Plaintiffs are eligible for benefits. The stipulation that Harris Chezumpena was a legal resident of the HPL on December 22, 1974 has no conclusive effect on Plaintiffs' legal residency, so the Court will remand for the IHO to properly consider the stipulation along with the other evidence.

///

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 21) is **granted**. The matter is **remanded** for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that Defendant ONHIR's Cross-Motion for Summary Judgment (Doc. 25) is **denied**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and **terminate this action**.

Dated this 25th day of October, 2021.

Honorable Steven P. Logan
United States District Judge